Youssef H. Hammoud (SBN: 321934)
yh@lawhammoud.com
**HAMMOUD LAW, P.C.**
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693

*Attorneys for Plaintiff*
*Tina Jaggers*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA JAGGERS,<br><br>         Plaintiff,<br><br>     v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; UNIVERSAL HEALTH SERVICES OF PALMDALE, INC. d/b/a CORONA REGIONAL MEDICAL CENTER; MEDICAL DATA SYSTEMS INC. d/b/a MEDICAL REVENUE SERVICE; FRESNO CREDIT BUREAU d/b/a CREDITORS BUREAU USA; RADAVANTAGE, A PROFESSIONAL CORPORATION; and GULF COAST COLLECTION BUREAU, INC.<br><br>         Defendants. | Case No. 5:22-cv-784<br><br><br>1.  RFDCPA, Cal. Civ. Code. § 1788 *et seq.*<br>2.  FDCPA, 15 U.S.C. § 1692, *et seq.* |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Tina Jaggers ("Plaintiff"), by and through her attorneys, alleges the following against Defendants Quest Diagnostics Clinical Laboratories, Inc. ("Quest"), Universal Health Services of Palmdale, Inc. d/b/a Corona Regional Medical Center ("UHS"), Medical Data Systems, Inc. d/b/a Medical Revenue Service ("MDS"), Fresno Credit Bureau d/b/a Creditor Bureau USA ("CBU"), Radadvantage, A Professional Corporation ("RAD"), and Gulf Coast Collection Bureau, Inc. ("GCCB").

## INTRODUCTION

1.      Counts I & II of Plaintiff's Complaint is based upon the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.,* and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*, which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices connection with the collection of consumer debts.

## JURISDICTION AND VENUE

2.      The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692.

3.      Supplemental jurisdiction of this court arises under 28 U.S.C. § 1367 because the state law claims are so related to the claims in the action within such

original jurisdiction that they form part of the same case or controversy under Article III of the US Constitution.

4.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5.    Because Defendants conduct business within the County of Riverside, State of California personal jurisdiction is established.

## **PARTIES**

6.    Plaintiff is a natural person residing in California

7.    Plaintiff is a "person" as defined by Cal. Civ. Code § 1788.2(g).

8.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

9.    Plaintiff, as a natural person allegedly obligated to pay a consumer debt to Defendants, alleged to have been due and owing, is a "debtor" as that term is defined by California Civil Code § 1788.2(h) of the Rosenthal Act.

10.    As a partnership, corporation, limited liability company, or other similar entity, Defendants are a "person" within the meaning of Cal. Civ. Code § 1788.2(g) of the Rosenthal Act, and within the meaning of Cal. Civ. Code § 1785.3(j).

11.    Defendants allege Plaintiff owed it money arising out of medical services performed upon Plaintiff by Defendants Quest, UHS and RAD for

COMPLAINT AND DEMAND FOR JURY TRIAL

treatment of injuries arising out of an industrial work-place accident, without payment being required at the time of services being rendered, and Plaintiff is informed and believes the money alleged to have been owed to Defendants originated from monetary credit that was extended primarily for personal, family, or household purposes, and is therefore a "debt" as that term is defined by California Civil Code § 1788.2(d).

12.     Plaintiff allegedly owed a monetary debt to Defendants, which makes Defendants each a "creditor" under California Civil Code § 1788.2(i) of the Rosenthal Act.

13.     Upon information and belief, Defendants were attempting to collect on a debt that originated from monetary credit that was extended primarily for personal, family, or household purposes due to medical services performed upon Plaintiff to treat injuries arising out of a work-place accident without payment being required at the time of services and was therefore a "consumer credit transaction" within the meaning of California Civil Code § 1788.2(e) of the Rosenthal Act.

14.     Because Plaintiff, a natural person allegedly obligated to pay money to Defendants arising from what Plaintiff is informed and believes was a consumer credit transaction due to medical services performed upon Plaintiff to treat injuries arising out of a work-place accident without payment being required at the time of

services, the money allegedly owed was a "consumer debt" within the meaning of California Civil Code § 1788.2(f) of the Rosenthal Act.

15.     Plaintiff is informed and believes Defendants regularly collect or attempt to collect debts on behalf of themselves and is therefore both a "debt collector" within the meaning of California Civil Code § 1788.2(c) of the Rosenthal Act, and thereby engages in "debt collection" within the meaning of California Civil Code § 1788.2(b) of the Rosenthal Act.

16.     At all relevant times herein, Defendant QDCL was a company engaged, by use of mails and telephone in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by Cal. Civ. Code § 1788.2(d). Defendant QDCL can be served through its agent for service of process, CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Dr. Ste. 150N, Sacramento, CA 95833.

17.     At all relevant times herein, Defendant UHS was a company engaged, by use of mails and telephone in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by Cal. Civ. Code § 1788.2(d). Defendant UHS can be served through its agent for service of process, CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Dr. Ste. 150N, Sacramento, CA 95833.

18.    At all relevant times herein, Defendant MDS was a company engaged, by use of mails and telephone in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by Cal. Civ. Code § 1788.2(d). Defendant MDS can be served through its agent for service of process, CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Dr. Ste. 150N, Sacramento, CA 95833.

19.    At all relevant times herein, Defendant MDS was a company engaged, by use of mails and telephone in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by Cal. Civ. Code § 1788.2(d). In addition, Defendant is in the business of debt collection. Defendant therefore is a "debt collector" as defined by 15 U.S.C. § 1692a(6). Defendant MDS can be served through its agent for service of process, CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Dr. Ste. 150N, Sacramento, CA 95833.

20.    At all relevant times herein, Defendant CBU was a company engaged, by use of mails and telephone in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by Cal. Civ. Code § 1788.2(d). In addition, Defendant is in the business of debt collection. Defendant therefore is a "debt collector" as defined by 15 U.S.C. § 1692a(6). Defendant CBU can be served at its principal place of business located at 757 L Street, Fresno, CA 93721.

21.     At all relevant times herein, Defendant RAD was a company engaged, by use of mails and telephone in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by Cal. Civ. Code § 1788.2(d). Defendant RAD can be served through its agent for service of process, CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Dr. Ste. 150N, Sacramento, CA 95833.

22.     At all relevant times herein, Defendant GCCB, Inc., was a company engaged, by use of mails and telephone in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by Cal. Civ. Code § 1788.2(d). In addition, Defendant is in the business of debt collection. Defendant therefore is a "debt collector" as defined by 15 U.S.C. § 1692a(6). Defendant GCCB can be served through its agent for service of process, C T Corporation System, located at 330 N. Brand Blvd., Ste. 700, Glendale, CA 91203.

23.     Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## **FACTUAL ALLEGATIONS**

### A. **Plaintiff' Workplace Injury**

24.     Defendants are attempting to collect an alleged debt from Mrs. Jaggers.

25.     In or around the years 2020 and 2021, Mrs. Jaggers received medical services from Defendants Quest, UHS, and RAD, for treatment arising from the injuries that are the subject of Plaintiff's worker's compensation claim, of which Defendants and their entire staff knew about and were aware all billings for services should be handled pursuant to the Worker's Compensation Act.

26.     During Plaintiff's many visits with Defendants, she informed Defendants that her injuries were the result of her work-place accident and provided all information necessary to bill the proper party.

27.     Nevertheless, Defendants began attempting to collect from Plaintiff directly and sent Plaintiff bills for collection for medical services she was not legally responsible for.

28.     Cal. Civ. Code § 1788, which prohibits unlawful debt collection activity, is a strict liability statute.

29.     15 U.S.C. § 1692, which prohibits unlawful debt collection activity, is a strict liability statute.

**B. Defendants' Collection Activity**

***i.     Defendants Quest and CUB Unlawful Collection Activity***

30.     On or about August 9, 2021, Plaintiff received a medical statement from Defendant Quest indicating that Plaintiff had an outstanding balance and

requested payment of the medical services provided for the treatment of injuries that are the subject of his worker's compensation claim.

31.     The letter was attempting to collect an amount of $95.90, of which Plaintiff is not responsible for.

32.     The letter was attempting to collect an amount that was not permitted by law because Plaintiff was not responsible for any and all medical bills received that were related to her workplace injury.

33.     On or about December 18, 2021, Plaintiff received another medical statement from Defendant Quest indicating that Plaintiff had an outstanding balance and requested payment of the medical services provided for the treatment of injuries that are the subject of his worker's compensation claim.

34.     The letter was attempting to collect an amount of $108.61, of which Plaintiff is not responsible for.

35.     The letter was attempting to collect an amount that was not permitted by law because Plaintiff was not responsible for any and all medical bills received that were related to her workplace injury.

36.     On or about February 08, 2022, Plaintiff received a medical statement from Defendant Quest indicating that Plaintiff had an outstanding balance and requested payment of the medical services provided for the treatment of injuries that are the subject of his worker's compensation claim.

37.     The letter was attempting to collect an amount of $40.00, of which Plaintiff is not responsible for.

38.     The letter was attempting to collect an amount that was not permitted by law because Plaintiff was not responsible for any and all medical bills received that were related to her workplace injury.

39.     Upon information and belief, Defendant Quest placed debt collection calls to Plaintiff in an attempt to collect on the alleged debt.

40.     On one or more occasion, either by phone or in person, Plaintiff directly informed Defendant Quest that the medical services rendered were related to her workers compensation claim.

41.     Furthermore, Plaintiff provided all necessary information to Defendant Quest to properly bill the medical services it rendered that was related to Plaintiff's workplace injury.

42.     Moreover, Defendant Quest placed one or more of Plaintiff's accounts for collection with Defendant CBU.

43.     In or around February 2022, Plaintiff received a collection letter from Defendant CUB for payment of medical services provided for the treatment of injuries that are the subject of his worker's compensation claim.

44.     The letter was attempting to collect an amount of $95.90, of which Plaintiff is not responsible for.

45.     The letter was attempting to collect an amount that was not permitted by law because Plaintiff was not responsible for any and all medical bills received that were related to her workplace injury.

46.     Upon information and belief, Defendant CUB placed debt collection calls to Plaintiff in an attempt to collect on the alleged debt.

47.     Upon information and belief, Defendant CUB lacks any policies and procedures to avoid collection on medical bills that are subject to a workers compensation claim.

### ii.      *Defendants UHS and MDS Unlawful Collection Activity*

48.     In or around February 2021, Plaintiff received collection letters from Defendant UHS for payment of medical services provided for the treatment of injuries that are the subject of his worker's compensation claim.

49.     The letters were attempting to collect an amount of $2,305.29, of which Plaintiff is not responsible for.

50.     On or about July 4, 2022, Plaintiff received a collection letter from Defendant UHS for payment of medical services provided for the treatment of injuries that are the subject of her worker's compensation claim.

51.     The letter was attempting to collect an amount of $2,305.29, of which Plaintiff is not responsible for.

52.     Upon information and belief, Defendant UHS placed debt collection calls to Plaintiff in an attempt to collect on the alleged debt.

53.     Moreover, Defendant UHS placed one or more of Plaintiff's accounts for collection with Defendant MDS.

54.     In or around May 2021, Plaintiff received a collection letter from Defendant MDS for payment of medical services provided for the treatment of injuries that are the subject of his worker's compensation claim.

55.     The letter was attempting to collect an amount of $2,305.29, of which Plaintiff is not responsible for.

56.     The letter was attempting to collect an amount that was not permitted by law because Plaintiff was not responsible for any and all medical bills received that were related to her workplace injury.

57.     Upon information and belief, Defendant MDS placed debt collection calls to Plaintiff in an attempt to collect on the alleged debt.

58.     Upon information and belief, Defendant MDS lacks any policies and procedures to avoid collection on medical bills that are subject to a workers compensation claim.

### iii.     *Defendants RAD and GCCB Unlawful Collection Activity*

59.     In or around December, 2021, Plaintiff received collection letters from Defendant RAD for payment of medical services provided for the treatment of injuries that are the subject of her worker's compensation claim.

60.     The letters were attempting to collect an amount of $60.00, of which Plaintiff is not responsible for.

61.     Upon information and belief, Defendant UHS placed debt collection calls to Plaintiff in an attempt to collect on the alleged debt.

62.     Moreover, Defendant RAD placed one or more of Plaintiff's accounts for collection with Defendant GCCB.

63.     In or around March 2022, Plaintiff received a collection letter from Defendant GCCB for payment of medical services provided for the treatment of injuries that are the subject of her worker's compensation claim.

64.     The letter was attempting to collect an amount of $60.00, of which Plaintiff is not responsible for.

65.     The letter was attempting to collect an amount that was not permitted by law because Plaintiff was not responsible for any and all medical bills received that were related to her workplace injury.

66.     Upon information and belief, Defendant GCCB placed debt collection calls to Plaintiff in an attempt to collect on the alleged debt.

67.     Upon information and belief, Defendant GCCB lacks any policies and procedures to avoid collection on medical bills that are subject to a workers compensation claim.

### iv.     Defendant CBU unlawful disclosure of information

68. At an exact time known only to Defendant CBU, the alleged debt owed to Quest was assigned or otherwise transferred to CBU for collection.

69. In its efforts to collect on the alleged debt owed to Quest, Defendant CBU decided to contact Plaintiff by written correspondence.

70. Rather than preparing and mailing such written correspondence to Plaintiff on its own, Defendant CBU decided to utilize a third-party vendor to perform such activities on its behalf.

71. As part of its utilization of the third-party vendor, Defendant conveyed information regarding the alleged Quest debt to the third-party vendor by electronic means.

72. The information conveyed by Defnedant CBU to the third-party vendor included Plaintiff's status as a debtor, the precise amount of the alleged Quest debt, the account number, the entity to which Plaintiff allegedly owed the debt, the fact that the alleged debt concerned Plaintiff's medical treatment, Plaintiff's home address, and other information.

73. In fact, Defendant CBU conveyed it was a debt collector and attempting to collect a debt from Plaintiff.

74. Defendant CBU's conveyance of the information regarding the alleged debt owed to Quest to the third-party vendor is a "communication" as that term is defined by 15 U.S.C. § 1692(a)(2).

75. The third-party vendor then populated some or all this information into a prewritten template, printed, and mailed the correspondence to Plaintiff at Defendant CBU's direction.

76. A correspondence, sent in or around February 2022, was received an dread by Plaintiff. (the "CBU letter").

77. The CBU Letter, which conveyed information about the alleged debt owed to Quest, is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

78. The FDCPA prohibits the sharing of information regarding a consumer "*without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy…*" See 15 U.S.C. § 1692c(b).

79. In the relevant part, Section 1692c(b) states, "*a debt collector may not communicate in connection with the collection of any debt, with any person*

*other than the consumer, her attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.*" See 15 U.S.C. § 1692c(b).

80. The sharing, transferring, or communicating of Plaintiff's information is prohibited by law.

81. Plaintiff did not provide her prior consent to the sharing of her information with the third party letter vendor Defendant CUB utilized.

82. Defendant CUB's intentinal or negligent conduct of sharing, transferring, or communicating of Plaintiff's personal and sensitive information without Plaintiff's prior consent, caused an invasion into Plaintiff's individual privacy, which caused Plaintiff concern, embarrassment, anxiety, worry, sleeplessness, and emotional distress causing Plaintiff to spend time to retain counsel, causing her loss of time.

### v. *Defendant GCCB unlawful disclosure of information*

83. At an exact time known only to Defendant GCCB, the alleged debt owed to RAD was assigned or otherwise transferred to GCCB for collection.

84. In its efforts to collect on the alleged debt owed to RAD, Defendant GCCB decided to contact Plaintiff by written correspondence.

85. Rather than preparing and mailing such written correspondence to Plaintiff on its own, Defendant GCCB decided to utilize a third-party vendor to perform such activities on its behalf.

86. As part of its utilization of the third-party vendor, Defendant conveyed information regarding the alleged RAD debt to the third-party vendor by electronic means.

87. The information conveyed by Defendant GCCB to the third-party vendor included Plaintiff's status as a debtor, the precise amount of the alleged RAD debt, the account number, the entity to which Plaintiff allegedly owed the debt, the fact that the alleged debt concerned Plaintiff's medical treatment, Plaintiff's home address, and other information.

88. In fact, Defendant GCCB conveyed it was a debt collector and attempting to collect a debt from Plaintiff.

89. Defendant GCCB's conveyance of the information regarding the alleged debt owed to RAD to the third-party vendor is a "communication" as that term is defined by 15 U.S.C. § 1692(a)(2).

90. The third-party vendor then populated some or all this information into a prewritten template, printed, and mailed the correspondence to Plaintiff at Defendant GCCB's direction.

91. A correspondence, sent in or around March 2022, was received and read by Plaintiff. (the "GCCB letter").

92. The GCCB Letter, which conveyed information about the alleged debt owed to RAD, is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

93. The FDCPA prohibits the sharing of information regarding a consumer "*without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy…*" See 15 U.S.C. § 1692c(b).

94. In the relevant part, Section 1692c(b) states, "*a debt collector may not communicate in connection with the collection of any debt, with any person other than the consumer, her attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.*" See 15 U.S.C. § 1692c(b).

95. The sharing, transferring, or communicating of Plaintiff's information is prohibited by law.

96. Plaintiff did not provide her prior consent to the sharing of her information with the third-party letter vendor Defendant GCCB utilized.

97. Defendant GCCB's intentional or negligent conduct of sharing, transferring, or communicating of Plaintiff's personal and sensitive information without Plaintiff's prior consent, caused an invasion into Plaintiff's individual privacy, which caused Plaintiff concern, embarrassment, anxiety, worry, sleeplessness, and emotional distress causing Plaintiff to spend time to retain counsel, causing her loss of time.

**vi.**   Damages

98. Defendants unlawful collection efforts regarding alleged debt arising from medical services rendered related to a workers compensation claim caused Plaintiff to suffer from emotional distress and mental pain and anguish, including but not limited to, stress, anxiety

## COUNT I
### All Defendants
### (Violations of CAL. CIV. CODE § 1788 *et seq.*)

99.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

100.    Defendants violated the RFDCPA. Defendants' violations include, but are not limited to, the following:

a.  Defendants violated Cal. Civ. Code § 1788.17 by collecting or attempting to collect a consumer debt without complying with the

provisions of Sections 1692b to 1692j, inclusive, of . . . Title 15 of the United States Code (Fair Debt Collection Practices Act).

a. Defendants violated 15 U.S.C. § 1692d, by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection a debt.

b. Defendants violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of any debt.

c. Defendants violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of any debt.

d. Defendants violated 15 U.S.C. § 1692e(10), by using false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

e. Defendants violated 15 U.S.C. § 1692f, by using unfair or unconscionable means to collect or attempt to collect any debt.

f. Defendants violated 15 U.S.C. § 1692f(1) by attempting to collect any amount (including any interest, fee, charge or expense incidental to the principal obligation) that is not permitted by law.

101.   Defendants' acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

102.   As a result of the foregoing violations of the RFDCPA, Defendants are liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs.

### COUNT II
### Defendants MDS, CBU and GCCB
### (Violations of the FDCPA, 15 U.S.C. § 1692 *et seq*.)

103.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

104.   Defendants violated the FDCPA. Defendants' violations include, but are not limited to, the following:

a.   Defendants violated 15 U.S.C. § 1692d, by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection a debt.

b.   Defendants violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of any debt.

c.   Defendants violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of any debt.

COMPLAINT AND DEMAND FOR JURY TRIAL

d. Defendants violated 15 U.S.C. § 1692e(10), by using false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

e. Defendants violated 15 U.S.C. § 1692f, by using unfair or unconscionable means to collect or attempt to collect any debt.

f. Defendants violated 15 U.S.C. § 1692f(1) by attempting to collect any amount (including any interest, fee, charge or expense incidental to the principal obligation) that is not permitted by law.

105. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

106. As a result of the foregoing violations of the FDCPA, CBB is liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs.

## **PRAYER OF RELIEF**

**WHEREFORE**, Plaintiff Tina Jaggers, respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the RFDCPA;

B. Declaratory judgment that Defendant MDS, CBU and GCCB violated the FDCPA;

COMPLAINT AND DEMAND FOR JURY TRIAL

C.  Statutory damages against Defendants of $1,000.00 pursuant to the RFDCPA, Cal. Civ. Code §1788.30(b);

D.  Actual damages against Defendants pursuant to Cal. Civ. Code §1788.30(a);

E.  Costs and reasonable attorneys' fees against Defendants pursuant to the RFDCPA, Cal. Civ. Code §1788.30(c);

F.  Actual damages against Defendant MDS, CBU and GCCB pursuant to 15 U.S.C. §1692k(a)(1);

G.  Statutory damages against Defendants MDS, CBU and GCCB of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

H.  Attorneys' fees and costs against Defendant MDS, CBU and GCCB pursuant to 15 U.S.C. §1692k(a)(3).

I.  Punitive damages pursuant to be determined at trial, for the sake of example and punishing Defendant for their malicious conduct, pursuant to Cal. Civ. Code § 3294.

J.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

K.  Any other relief that this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a trial by jury in this action.

COMPLAINT AND DEMAND FOR JURY TRIAL

Respectfully submitted this May 07, 2022.

By: /s/ *Youssef H. Hammoud*
Youssef H. Hammoud (SBN: 321934)
**HAMMOUD LAW, P.C.**
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693

*Attorneys for Plaintiff,*
*Tina Jaggers*